**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Betty Garcia,                                    )   No. CV-11-0661-TUC-BGM
                                                 )
                    Plaintiff,                   )
                                                 )
vs.                                              )   **ORDER**
                                                 )
Carolyn W. Colvin,                               )
Acting Commissioner of Social Security,          )
                                                 )
                    Defendant.                   )
_____  )

Currently pending before the Court is Plaintiff Betty Garcia's Opening Brief (Doc. 14). A response and reply have been filed. Plaintiff brings this cause of action for review of the final decision of the Commissioner for Social Security pursuant to 42 U.S.C. § 405(g). The United States Magistrate Judge has received the written consent of both parties, and presides over this case pursuant to 28 U.S.C. § 636(c) and Rule 73, Federal Rules of Civil Procedure. The Court takes judicial notice that Michael J. Astrue is no longer Commissioner of the Social Security Administration ("SSA"). The Court will substitute the new Acting Commissioner of the SSA, Carolyn W. Colvin, as Respondent pursuant to Rule 25(d) of the Federal Rules of Civil Procedure. *See also* Fed. R. App. P. 43(c)(2).

## I.    BACKGROUND

### A.    *Procedural History*

On January 23, 2008, Plaintiff protectively filed an initial application for Social Security Disability Insurance Benefits ("DIB") for an allegedly disabling condition due to

1  fibromyalgia, a cyst near her spine and carpel tunnel, that arose on November 20, 2007.[1]  *See*

2  Administrative Record ("AR") at 22; 130.  The Social Security Administration ("SSA")

3  denied this application on April 28, 2008.  *Id.* at 63-66.  On June 3, 2008, Plaintiff filed a

4  Request for Reconsideration.[2]  *See id.* at 67-68.  On September 3, 2008, SSA denied

5  Plaintiff's request for reconsideration. *Id.* at 70-72.  On October 16, 2008, Plaintiff filed her

6  request for hearing.  *Id.* at 73-74.  On September 21, 2009, a hearing was held before

7  Administrative Law Judge ("ALJ") M. Kathleen Gavin.  AR at 31.  The ALJ issued an

8  unfavorable decision on January 12, 2010.  *Id.* at 19-26.  On January 29, 2010, Plaintiff

9  requested review of the ALJ's decision by the Appeals Council. *Id.* at 9.  On August 18,

10  2011, Plaintiff's appeal was denied. *Id.* at 1.  Plaintiff filed this cause of action on October

11  18, 2011.  Compl. (Doc. 1).

12          **B.      *Factual History***

13          Plaintiff was fifty-five (55) years old at the time of the administrative hearing, and

14  fifty-three (53) at the time of the alleged onset of her disability.  AR at 35, 127, 131.  Plaintiff

15  possesses a high school education, and worked as a phlebotomist at the time of her alleged

16  onset.  *Id.* at 36, 37, 131, 137, 253.  Prior to her alleged disability, Plaintiff worked for ten

17  (10) years at the Red Cross. *Id.* at 37, 131.  She has also worked in various capacities for the

18  federal and Arizona State governments.  *Id.* at 155-59.

19          At the administrative hearing, Plaintiff testified that she is "in constant pain . . . [a]ll

20  over [her] body[,] [including her] neck, . . . shoulders, . . . hips, . . . wrists, . . . [and] fingers."

21  AR at 39.  Plaintiff further testified that she "get[s] tingling in [her] hands and fingers . . .

22  [and] feel[s] depressed a lot of times."  *Id.*  Plaintiff testified that the pain was an aching,

23  _____

24          [1]The Administrative Law Judge (ALJ) stated January 23, 2008 as the protective filing date
    in her opinion.  The record, however, reflects a protective filing date of February 4, 2008.  *See* AR

25  105, 167.

26          [2]The Request for Reconsideration was date stamped received on June 3, 2008; however,
    Plaintiff did not sign the document until August 8, 2008.  As such, the record is unclear when the

27  request was actually filed.

28                                          - 2 -

1   burning soreness that was between eight (8) and ten (10) most of the time.[3]  *Id.*  Regarding

2   her left hand, Plaintiff testified that she had surgery for carpal tunnel syndrome and the

3   trigger finger approximately two (2) years prior to the administrative hearing.  *Id.*  Plaintiff

4   testified that she still has problems with her hand, because her finger still swells and hurts.

5   *Id*. at 39-40.  Plaintiff also testified that she often feels depressed, and does not want to get

6   out of bed.  AR at 40.  When the ALJ asked about Plaintiff's lack of treatment for depression,

7   Plaintiff responded that she is concerned about being institutionalized.  *Id.* at 40-41.  Plaintiff

8   also testified that previous antidepressants made her sick.  *Id.* at 42-43.  Plaintiff further

9   testified that she does not sleep well due to pain and restless legs.  *Id.* at 43.  This wakes her

10  up two or three times a night.  *Id.*  Plaintiff testified that as a result her pain affecting her

11  sleep at night, she takes two or three naps during the day.  AR at 49.  Plaintiff's testimony

12  reflects that she sleeps for only approximately two hours at a time.  *Id.* at 49.  Moreover, on

13  some days she does not want to get out of bed at all.  *Id.*

14      Plaintiff testified regarding her back pain that it hurts to bend or stoop, and her legs

15  ache and have tingling and numbness radiating from her back.  AR at 51.  Due to the pain

16  from her fibromyalgia, Plaintiff stated that she can only sit in a chair for approximately

17  twenty (20) minutes.  *Id.*  Plaintiff further testified that the pain also prevents her from

18  standing too long.  *Id.*  In order to relieve her pain, Plaintiff either lays down or takes

19  ibuprofen or Tylenol.  *Id.* at 52.

20      Plaintiff described her typical day as waking up around 7 o'clock, going to the

21  bathroom, taking some Tylenol or ibuprofen for her pain and then going back to sleep.  AR

22  at 43-44.  Plaintiff testified that she gets up again around 9:30 or 10 o'clock, and takes a

23  shower if she feels able.  *Id.* at 44.  Plaintiff will sit in the living room and eat a bowl of

24  cereal or something similar.  *Id.*  Plaintiff further testified that she watches television, and

25  then sometimes goes to sit outside.  *Id.*  Plaintiff prepares her own meals, and tries to do her

26

27      [3]On a scale of one (1) to ten (10), with ten (10) the worst pain imaginable.  AR at 39.

28                                          - 3 -

own housework. *Id.* at 44-45. Plaintiff stated that she also grocery shops, and on occasion will attempt to do yard work. AR at 45, 47. She tries to read, but sometimes has difficulty concentrating and sitting. *Id.* Plaintiff testified that she tries to get out and walk around in her neighborhood or be with her dog, but has no hobbies. *Id.* at 46. Plaintiff also tries to go to church on Sundays. *Id.* at 47. Plaintiff testified that her bad days, described as those days in which she does not want to get out of bed or get dressed, occur three (3) to four (4) times per week.

Ms. Ruth Van Vleet,[4] a vocational expert, also testified at the administrative hearing. AR at 54. Ms. Van Vleet testified that she had reviewed the exhibits from Plaintiff's file prior to the hearing, but was neither personally acquainted nor had any prior professional contact with her. *Id.* at 54. Ms. Van Vleet testified that Plaintiff's job as a phlebotomist was considered light, semi-skilled, as were the previous jobs in Plaintiff's work history. *Id.* at 55. Ms. Van Vleet further testified that if Plaintiff could "perform work at the light exertional level with no further limitations she would be able to perform her past relevant work[.]" *Id.* at 56. Pain and depression, however, would eliminate jobs held previously by Plaintiff. *Id.* The ALJ asked Ms. Van Vleet if Plaintiff were limited to simple light work, if there would be a significant number of jobs in the regional and national economy that she could perform. AR at 56. Ms. Van Vleet clarified that the ALJ meant light, unskilled work, and proceeded to answer affirmatively. *Id.* Ms. Van Vleet opined that in such a situation, Plaintiff could work as a cashier, office helper, usher or ticket taker. *Id.* The ALJ asked a further hypothetical of Ms. Van Vleet regarding job availability, based on Plaintiff's testimony that she could do light activity, but would be unable to sustain it for eight (8) hours per day, five (5) days per week, and would miss more than two (2) days per month. *Id.* Ms. Van Vleet testified that in such a circumstance, there would not be any jobs available to Plaintiff. *Id.*

---

[4]Although the hearing transcript refers to her as Ms. VanFleet, the ALJ's decision and the vocational expert's curriculum vitae reflect that her name is Ruth Van Vleet. AR at 22, 98.

- 4 -

Pursuant to request by the Commissioner, Plaintiff was examined by Randy Soo Hoo, M.D., M.P.H., FACOEM. AR at 252-58. Prior to examination, Dr. SooHoo reviewed Plaintiff's medical records. *Id.* at 252. Dr. Soo Hoo stated the reason for the evaluation as "a physical medicine consultation to address [Plaintiff's] allegations of 'fibromyalgia, cyst near her spine, and carpal tunnel syndrome.'" *Id.* Dr. Soo Hoo's musculoskeletal examination states as follows:

> Examination of the cervical spine demonstrates full functional range of motion. Client complained of pain with O'Donoghue's maneuvers. She had palpation tenderness over the paracervical musculature. Examination of the lumbar spine does not reveal evidence of deformities. Active range of motion revealed flexion to 60 degrees, extension to 10 degrees, right and left lateral flexion to 20 degrees. Straight leg raising generated subjective complaints of posterior thigh pain bilaterally at 70 degrees; complaints were not reproducible in the seated position. EHL strength was not felt to be reliable secondary to diminished effort. Break-a-way weakness was noted in the [sic] both lower extremity strength testing. Examination of the left hand reveals minimal swelling over the volar aspect of the left wrist. Tinel's, Phalen's, and Durkin's test were negative. Grip strength was diminished and may have been effort dependent. Client had diffuse tenderness over the fibromyalgia points and tenderness over all control points. Waddell were positive for superficial tenderness, axial loading, simulated rotation, and distraction test, and regional disturbances.

*Id.* at 254. Dr. Soo Hoo's clinical impression reiterates Plaintiff's "history for fibromyalgia, . . . a spinal cyst with reported MRI findings demonstrating this abnormality[,] . . . [and] a history of carpal tunnel syndrome that does not appear to be symptomatic at this time." *Id.*

Plaintiff's medical records, including progress notes from her treating primary care physician and rheumatologist, were also considered by the ALJ. AR at 25. In her September 10, 2008 progress note, Laurie Bergstrom, M.D., Plaintiff's rheumatologist, noted Plaintiff's history of fibromyalgia, and upon examination recorded greater than twelve (12) tenderpoints in Plaintiff's upper and lower extremities. *Id.* at 339. Dr. Bergstrom also noted "diffuse pain in non-FM tenderpoint locations." *Id.* Dr. Bergstrom's assessment noted both fibromyalgia and chronic pain syndrome. *Id.* at 340. These findings are consistent throughout Plaintiff's records. AR at 122, 198, 237-41, 243-44, 337, 339-42, 350.

1    **II.    STANDARD OF REVIEW**

2        The factual findings of the Commissioner shall be conclusive so long as they are

3    based upon substantial evidence and there is no legal error.  42 U.S.C. §§ 405(g), 1383(c)(3);

4    *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).  This Court may "set aside the

5    Commissioner's denial of disability insurance benefits when the ALJ's findings are based

6    on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*

7    *v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted).

8        Substantial evidence is "'more than a mere scintilla[,] but not necessarily a

9    preponderance." *Tommasetti*, 533 F.3d at 1038 (quoting *Connett v. Barnhart*, 340 F.3d 871,

10   873 (9th Cir. 2003)); *see also Tackett*, 180 F.3d at 1098.  Further, substantial evidence is

11   "such relevant evidence as a reasonable mind might accept as adequate to support a

12   conclusion." *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).  Where "the evidence can

13   support either outcome, the court may not substitute its judgment for that of the ALJ."

14   *Tackett*, 180 F.3d at 1098 (citing *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992));

15   *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007).  Moreover, the court may

16   not focus on an isolated piece of supporting evidence, rather it must consider the entirety of

17   the record weighing both evidence that supports as well as that which detracts from the

18   Secretary's conclusion. *Tackett*, 180 F.3d at 1098 (citations omitted).

19

20   **III.   ANALYSIS**

21       The Commissioner follows a five-step sequential evaluation process to assess whether

22   a claimant is disabled.  20 C.F.R. § 404.1520(a)(4).  This process is defined as follows:

23   Step One asks is the claimant "doing substantial gainful activity[?]" If yes, the claimant is

24   not disabled;  Step Two considers if the claimant has a "severe medically determinable

25   physical or mental impairment[.]" If not, the claimant is not disabled;  Step Three determines

26   whether the claimant's impairments or combination thereof meet or equal an impairment

27   listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1.  If not, the claimant is not disabled; Step Four

28

considers the claimant's residual functional capacity and past relevant work. If claimant can still do past relevant work, then he or she is not disabled; Step Five assesses the claimant's residual functional capacity, age, education, and work experience. If it is determined that the claimant can make an adjustment to other work, then he or she is not disabled. 20 C.F.R. § 404.1520(a)(4)(i)-(v).

In the instant case, the ALJ found that Plaintiff was not engaged in substantial gainful activity since November 20, 2007. AR at 24. At Step 2 of the sequential evaluation, the ALJ found that "[t]here are no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment (20 CFR 404.1520(c))." *Id.* Plaintiff asserts that the Commissioner's decision is not based on substantial evidence and is not free of legal error because (1) "the Commissioner has failed to fully and fairly develop the record of Plaintiff's combined impairments[;]" and (2) "the Commissioner has failed to apply the proper legal standards such as those required by Ruling 99-2 . . . [which] describes the way to evaluate A-typical signs and symptoms in cases largely driven by symptom evidence." Pl.'s Opening Brief (Doc. 14) at 8, 10.

### A.    *Step Two Non-Severity Finding*

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). The claimant bears the burden to show medical evidence consisting of signs, symptoms, and laboratory findings to establish a medically determinable physical or mental impairment. *Ukolov v. Barnhart*, 420 F.3d 1002, 1004-05 (9th Cir. 2005); 20 C.F.R. §§ 404.1512, 404.1520; *see also Tackett*, 189 F.3d at 1098.

"[T]he step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing *Bowen v. Yuckert*, 482 U.S. 137, 153-54, 107 S.Ct. 2287, 2297-98, 96 L.Ed.2d 119 (1987)). "An impairment or

1   combination of impairments may be found 'not severe *only if* the evidence establishes a slight

2   abnormality that has no more than a minimal effect on an individual's ability to work.'"

3   *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quoting *Smolen*, 80 F.3d at 1290

4   (emphasis added)).   "[O]nce a claimant produces objective medical evidence of an

5   underlying impairment, an [ALJ] may not reject a claimant's subjective complaints based

6   solely on a lack of objective medical evidence to fully corroborate the alleged severity of

7   pain." *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (quoting *Bunnell v. Sullivan*,

8   947 F.2d 341, 345 (9th Cir. 1991) (en banc)) (alterations in original).   Moreover, "[t]he ALJ

9   may not reject the opinion of a treating physician, even if it is contradicted by the opinions

10  of other doctors, without providing 'specific and legitimate reasons' supported by substantial

11  evidence in the record." *Id.* (citing *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)).

12       Here, the ALJ rejected "claimant's subjective allegations [as] not credible and [found

13  that] there are no medical signs or laboratory findings to substantiate the existence of a

14  medically determinable impairment." AR at 26.  The ALJ provided a brief summary of the

15  medical care received by Plaintiff, concluding that "[c]laimant's subjective reports to both

16  the undersigned and to her own medical providers are less than credible." *Id.*  The ALJ based

17  her credibility determination on Plaintiff's refusal to treat with any form of prescription pain

18  medication, as well as Dr. Soo Hoo's report.  *Id.*

19       **B.    *Plaintiff's Treating Physicians***

20       Fibromyalgia is "a rheumatic disease that causes inflammation of the fibrous

21  connective tissue components of muscles, tendons, ligaments, and other tissue." *Benecke v.*

22  *Barnhart*, 379 F.3d 587, 589 (9th Cir. 2004) (citing *Lang v. Long-Term Disability Plan of*

23  *Sponsor Applied Remote Tech, Inc.*, 125 F.3d 794, 796 (9th Cir. 1997)).   "Common

24  symptoms . . . include chronic pain throughout the body, multiple tender points, fatigue,

25  stiffness, and a pattern of sleep disturbance that can exacerbate the cycle of pain and fatigue

26  associated with this disease." *Id.* at 590.  "There are no laboratory tests for the presence or

27  severity of fibromyalgia.  The principal symptoms are 'pain all over,' fatigue, disturbed

28                                         - 8 -

1   sleep, stiffness, and 'the only symptom that discriminates between it and other diseases of

2   a rheumatic character' multiple tender spots, more precisely 18 fixed locations on the body

3   (and the rule of thumb is that the patient must have at least 11 of them to be diagnosed as

4   having fibromyalgia)[.]" *Rollins v. Massanari*, 261 F.3d 853, 855 (9th Cir. 2001) (quoting

5   *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996)).

6        Plaintiff's treating rheumatologist, Dr. Bergstrom's first progress note, dated

7   November 30, 2007 assessed Plaintiff with "multiple areas of myofascial pain and though

8   not all tenderpoints +, she has many symptoms that would be consistent with fibromyalgia."

9   AR 338.  Dr. Bergstrom's September 10, 2008 progress note states:

10
11   > Pt has +FM tenderpoints that are used in the criteria for fibromyalgia.
   > Difficult to fully evaluate since she has chronic diffuse pain in areas not
   > considered to be FM tenderpoints.  She is very concerned about potential side
12   > effects of medications and has declined any treatment. Per her history, she has
   > tried medications in the past with negative results.  We did discuss a trial of
13   > gabapentin low dose at night.  She is reluctant esp since she would need to
   > have labs q 6 months while on it, but will consider.  We had discussion that
14   > stretching and gentle exercise are essential to the treatment of fibromyalgia.
   > She will work to improve this.  I am also concerned that depression is
   > complicating her current condition and have asked her to discuss with Dr.
15   > Brown.

16   *Id.* at 340.  Subsequently, Dr. Bergstrom's September 11, 2008 letter to MetLife describes

17   "chronic, diffuse musculoskeletal pain throughout [Plaintiff's] body.  She has 16 tender

18   points to palpation on my exam.  She also suffers from chronic back pain and fatigue.  I

19   believe that depression is also complicating her condition.   No cure is available for

20   fibromyalgia, unfortunately."  *Id.* at 122.

21        Similarly, on December 4, 2007, Plaintiff's primary care physician, Judith Brown,

22   M.D., noted "[f]ibromyalgia with difficulty sleeping, trial Ambien 10 mg q.h.s. p.r.n. # 30

23   with five refills."  *Id.* at 240.  On January 25, 2008, Dr. Brown assessed "[f]ibromyalgia,

24   chronic fatigue and low back pain[.]" *Id.* at 237.  Further, at the time of the administrative

25   hearing, Plaintiff was taking Paxil and Alprazolam for depression and anxiety.  *Id.* at 42.

26   Additionally, on April 4, 2005, Dr. Brown sent Plaintiff for a lumbar MRI, that indicated "a

27   perincural cyst associated with the descending L5 nerve root in the left lateral recess of L5[,]

28

1   . . [and] mild superimposed broad disc bulging . . . [and] prominent bilateral facet and
2   ligamentous hypertrophy." *Id.* at 375.

3       The ALJ rejected Plaintiff's subjective allegations as not credible and found that
4   "there are no medical signs or laboratory findings to substantiate the existence of a medically
5   determinable impairment." AR at 26.  This, despite Plaintiff's treating physicians' findings
6   of positive fibromyalgia tenderpoints at 16 of 18 points, sleep disturbance, chronic pain,
7   fatigue, and depression. *See Webb*, 433 F.3d at 688 ("Webb's clinical records did not merely
8   record the complaints he made to his physicians, nor did his physicians dismiss Webb's
9   complaints as altogether unfounded.").   "The ALJ erred by 'effectively requir[ing]
10  'objective' evidence for a disease that eludes such measurement." *Benecke*, 379 F.3d at 594
11  (quoting *Green-Younger v. Barnhart*, 335 F.3d 99, 108 (2d Cir. 2003)) (alterations in
12  original).  Furthermore, the ALJ erred in rejecting Plaintiff's treating physicians without
13  providing specific and legitimate reasons' supported by substantial evidence in the record for
14  such rejection.  The ALJ relied in part on Dr. Soo Hoo's report, which suggested some
15  evidence of a lack of effort during Plaintiff's examination, but does not support evidence of
16  "outright malingering" as the ALJ concluded. *See id.* at 26.  Moreover, the ALJ opined that
17  Plaintiff was not credible in either her testimony at the administrative hearing or to her own
18  medical providers. *Id.*  "Sheer disbelief[, however,] is no substitute for substantial evidence."
19  *Benecke*, 379 F.3d at 594.

20      As such, this Court cannot conclude that substantial evidence supports the ALJ's
21  finding that Plaintiff's fibromyalgia had no more than a minimal effect on her ability to work.
22  Moreover, the ALJ did not find any other severe impairments and thereby stopped the
23  sequential evaluation at step two.  Such error is not harmless, "[t]he ALJ should have
24  continued the sequential analysis beyond step two because there was not substantial evidence
25  to show that [Plaintiff's] claim was 'groundless.'" *Webb*, 433 F.3d at 688 (citing *Smolen*, 80
26  F.3d at 1290).

27
28

1    ### C.    Combined Impairments

2    In light of this Court's finding that the ALJ erred in her finding of non-severity

3    regarding Plaintiff's fibromyalgia at step two, the Court declines to address whether she

4    failed to properly assess Plaintiff's combined impairments.

5    ### D.    Remand for Further Proceedings

6    "'[T]he decision whether to remand the case for additional evidence or simply to

7    award benefits is within the discretion of the court.'" *Rodriguez v. Bowen*, 876 F.2d 759, 763

8    (9th Cir. 1989) (*quoting Stone v. Heckler*, 761 F.2d 530, 533 (9th Cir. 1985)). "Remand for

9    further administrative proceedings is appropriate if enhancement of the record would be

10   useful." *Benecke*, 379 F.3d at 593 (*citing Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir.

11   2000)). Conversely, remand for an award of benefits is appropriate where:

12          (1) the ALJ failed to provide legally sufficient reasons for rejecting the
            evidence; (2) there are no outstanding issues that must be resolved before a
13          determination of disability can be made; and (3) it is clear from the record that
            the ALJ would be required to find the claimant disabled were such evidence
14          credited.

15   *Benecke*, 379 F.3d at 593 (citations omitted). Where the test is met, "we will not remand

16   solely to allow the ALJ to make specific findings. . . . Rather, we take the relevant testimony

17   to be established as true and remand for an award of benefits." *Id.* (citations omitted); *see*

18   *also Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995).

19   Here, the ALJ erred in finding "that the medical evidence clearly established

20   [Plaintiff's] lack of a medically severe impairment or combination of impairments." *Webb*,

21   433 F.3d at 688. In light of the ALJ's dismissal at step two, there remain issues regarding

22   Plaintiff's residual functional capacity and her ability to perform other work existing in

23   significant numbers in the national economy. Moreover, although Plaintiff's fibromyalgia

24   may be considered severe, this Court offers no opinion as to whether Plaintiff is disabled

25   within the meaning of the Act. Additionally, this Court did not address Plaintiff's other

26   claims of severe impairment due to her carpel tunnel syndrome, depression, and lower back

27   pain due to cyst; however, the ALJ is required to consider all of these in her assessment on

28

1    remand.   SSR 86–8p, 1996 WL 374184, at *5 (S.S.A.1996) ("In assessing RFC, the

2    adjudicator must consider limitations imposed by all of an individual's impairments, even

3    those that are not 'severe.'").

4

5        Accordingly, IT IS HEREBY ORDERED that:

6        1)    Carolyn W. Colvin, Acting Commissioner of Social Security, is **substituted**

7    **as Respondent** for Michael Astrue pursuant to Rule 25(d) of the Federal Rules of Civil

8    Procedure and Rule 43(c)(2) of the Federal Rules of Appellate Procedure;

9        2)    Plaintiff's Opening Brief (Doc. 14) is GRANTED;

10       3)    The Commissioner's decision is REVERSED and REMANDED for

11   proceedings consistent with this Order; and

12       4)    The Clerk of the Court shall enter judgment, and close its file in this matter.

13   DATED this 13th day of March, 2013.

14

15   _____

16                Bruce G. Macdonald
                 United States Magistrate Judge

17

18

19

20

21

22

23

24

25

26

27

28